**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____
                                                    :
JOHN J. CARNEY, IN HIS CAPACITY      :
AS COURT APPOINTED RECEIVER,        :
                                                    :      Case No. 3:12-CV-00182 (SRU)
         Plaintiff,                                :
                                                    :
v.                                                  :
                                                    :
FRANCISCO LOPEZ, et al.,                  :
                                                    :
         Defendants.                            :
_____   :      June 1, 2012

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CHRISTOPHER LUTH'S MOTION TO DISMISS AND TO STRIKE**

Alfred U. Pavlis (ct08603)
Richard S. Gora (ct27479)
FINN DIXON & HERLING LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2689
Tel: (203) 325-5000
Fax: (203) 325-5001
apavlis@fdh.com
rgora@fdh.com

*Of Counsel*
Michael Q. English
FINN DIXON & HERLING LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2689
Tel: (203) 325-5000
Fax: (203) 325-5001
menglish@fdh.com


**COUNSEL FOR DEFENDANT CHRISTOPHER LUTH**

PRELIMINARY STATEMENT .......................................................... 1

SUMMARY OF THE ALLEGATIONS ................................................. 2

RELEVANT FACTS OMITTED FROM THE COMPLAINT ................. 3

LEGAL STANDARD ......................................................................... 5

ARGUMENT ..................................................................................... 7

I.   THE CLAIMS FOR INTENTIONAL FRAUDULENT CONVEYANCE (COUNTS ONE AND FOUR) SHOULD BE DISMISSED PURSUANT TO RULES 12(b)(6) AND 9(b) ................................................................................................... 7

   A.   COUNT ONE – ACTUAL FRAUD UNDER CUFTA ......................... 7

      1.   Count One Fails To State A Claim Upon Which Relief Can Be Granted ............. 8

      2.   Count One Should Be Dismissed For Failure To Plead With Particularity ....... 12

   B.   COUNT FOUR – COMMON LAW FRAUDULENT CONVEYANCE ...................................... 12

II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR CONSTRUCTIVE FRAUDULENT CONVEYANCE (COUNTS TWO AND THREE) ...................................... 13

III.   THE COURT SHOULD DISMISS THE CUTPA CLAIM (FIFTH COUNT) .......... 16

IV.   THE COURT SHOULD DISMISS THE BREACH OF FIDUCIARY DUTY CLAIM (SIXTH COUNT) ......................................................................... 20

V.   THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM (SEVENTH COUNT) ......................................................................... 21

VI.   THE COURT SHOULD DISMISS THE CONVERSION CLAIM (NINTH COUNT) 21

   A.   THE TRANSFERS TO MR. LUTH WERE AUTHORIZED ................... 22

   B.   THE MONEY TRANSFER TO MR. LUTH IS NOT SPECIFICALLY SEGREGATED OR IDENTIFIABLE ............................................................................. 23

VII.   THE COURT SHOULD DISMISS THE PORTIONS OF THE CLAIMS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ...................................... 24

   A.   PORTIONS OF THE FIRST, SECOND AND THIRD COUNTS (FRAUDULENT TRANSFERS UNDER CUFTA) SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 52-552j ..... 25

**B.     PORTIONS OF THE FOURTH (COMMON LAW FRAUD), SIXTH (BREACH OF FIDUCIARY DUTY), SEVENTH (UNJUST ENRICHMENT) AND NINTH (CONVERSION) COUNTS SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 52-577** ....................................................... 25

**C.     PORTIONS OF THE FIFTH COUNT (VIOLATION OF CUTPA) SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 42-110g(f)** ..................................................... 27

**D.     PORTIONS OF THE TENTH COUNT (ACCOUNTING) SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 52-576** ................................................................ 27

**VIII.    THE COURT SHOULD DISMISS THE CLAIM FOR A CONSTRCUTIVE TRUST (EIGHTH COUNT)** ................................................................................ 28

**IX.    THE COURT SHOULD STRIKE PARAGRAPH 70 FROM THE COMPLAINT** .. 29

**X.    MR. LUTH ADOPTS APPLICABLE ARGUMENTS FOR DISMISSAL OF HIS CO-DEFENDANTS** ................................................................................................ 30

**CONCLUSION** ................................................................................................ 31

Defendant Christopher Luth ("Mr. Luth") respectfully submits this memorandum of law in support of his motion to (i) dismiss Counts One through Ten of the Complaint pursuant to FED. R. CIV. P. 9(b) and 12(b)(6), and (ii) strike paragraph 70 of the Complaint.

## PRELIMINARY STATEMENT

The Complaint represents an improper, shotgun effort by the Receiver to collect money from anyone who happened to be associated with Francisco Illarramendi at Highview Point Partners, LLC ("HVP Partners").  Based solely on the fact that Mr. Luth was a co-member with Illarramendi in HVP Partners, combined with sheer speculation and conjecture that Mr. Luth "must have" or "should have" known that Illarramendi was engaged in wrongdoing, the Receiver seeks the return of each and every dollar that Mr. Luth earned at HVP Partners since 2005.

The Complaint is completely devoid of any specific factual allegations from which to conclude that Mr. Luth had actual knowledge of Mr. Illarramendi's scheme.  Indeed, to the contrary, it contains specific allegations that support the opposite conclusion – that Mr. Illarramendi hid the scheme from Mr. Luth in the same way he hid it from HVP's auditors and numerous other parties.  Moreover, although the Receiver alleges that Mr. Luth "should have been aware of many red flags," his Complaint fails to specify the red flags that Mr. Luth supposedly ignored.  Instead, the Receiver resorts to general and conclusory allegations in which he lumps all of the defendants together improperly as a group.  When these allegations are disregarded (as they must be), the Complaint collapses.  It fails to put forth a plausible theory that the payments to Mr. Luth constitute fraudulent conveyances, as opposed to legitimate salary and bonus payments for services rendered.

Grasping at straws, the Receiver also claims that Mr. Luth violated the Connecticut Unfair Trade Practices Act ("CUTPA"), breached his fiduciary duties, was unjustly enriched,

and engaged in conversion.  These claims fail for the same reasons as the fraudulent transfer

claims – the Receiver fails to allege a plausible factual basis to support the causes of action.

Moreover, the conversion claim fails as a matter of law because the Receiver fails to allege that

(i) HVP Partners was not authorized to compensate Mr. Luth for his work, and (ii) the funds

transferred to him by HVP Partners were specifically identifiable or segregated.  The Receiver's

claim under the Connecticut Unfair Trade Practices Act ("CUTPA") also fails as a matter of law

because the Complaint's allegations plainly relate to employment conduct and intracorporate

affairs, which are outside the scope of CUTPA for lack of a nexus to "trade" or "commerce."

Finally, the Receiver's constructive trust claim fails because it is not a recognized cause of action

under Connecticut law.  For all of these reasons, Counts One through Ten of the Complaint

should be dismissed.

## SUMMARY OF THE ALLEGATIONS

The Complaint alleges that HVP Partners was formed in 2004 by Mr. Luth, Francisco

Illarramendi, and Frank Lopez, who were each one third-owners.  Compl. ¶ 13.  Mr. Luth is

alleged to be "portfolio manager of HVP Partners."  Compl. ¶ 41.  Notably (and perhaps

signaling that the Receiver lacks full confidence in this claim), the Receiver then alleges "on

information and belief" that Mr. Luth "on a day-to-day basis" would "purportedly analyze

potential investments and he held final responsibility for making investment decisions."  Compl.

¶ 41.  The Complaint then alleges that Mr. Luth "abdicated responsibilities over the [HVP

Partners] investments to Illarramendi" while receiving salary, partnership distributions, and

bonus payments between 2005 and 2010.  Compl. ¶¶ 41, 49.

According to the Complaint, Illarramendi orchestrated a five-year Ponzi scheme, that

began in late 2005 as a result of significant losses resulting from a deal brokered by Illarramendi.

Compl. ¶¶ 1, 33.  To hide those losses, Illarramendi is alleged to have improperly transferred

proceeds in funds controlled by the HVP Partners and fraudulently concealed his losses in the books and records of HVP Partners' Offshore Fund.  Compl. ¶ 33.  The Complaint alleges that Illarramendi informed Lopez about the existence of the fraud in 2006, and "the two agreed not to inform investors or anyone else about the existence of the Fraudulent Scheme."  Compl. ¶ 43.

Based on these barebones allegations, the Complaint concludes that Mr. Luth was "aware of the blatant red flags surrounding [Illarramendi's] transfers [in furtherance of the alleged fraudulent scheme] and others like them but chose to ignore them."  Compl. ¶ 38.  The Complaint further concludes that Mr. Luth "should have known that [he was] not entitled to receive [] distributions of 'free' company money or to receive salary and bonus payments while abdicating [his] responsibilities and failing miserably to meet even the most basic standard of care expected of a fiduciary and senior manager."  Compl. ¶ 84.

## RELEVANT FACTS OMITTED FROM THE COMPLAINT

The Receiver has had control and possession of HVP Partners' files, and access to Mr. Illarramendi, for close to a year.  Significantly, despite this knowledge, the Receiver fails to include in the Complaint several highly relevant facts — which are memorialized in documents or transcripts in his possession — that bear directly on Mr. Luth's alleged liability.[1]  For example, the Complaint leaves the misimpression that Mr. Luth was the *sole* portfolio manager

---

[1] The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *see also Cellular Technical Servs. Co. v. Trueposition, Inc.*, 609 F. Supp. 2d 223, 226-27 (D. Conn. 2009).  Here, the Receiver relied on the testimony of Francisco Illarramendi in order to demonstrate that Illarramendi informed Lopez of the fraudulent scheme.  *See* Compl. ¶ 43.  Although the Receiver did not attach this transcript to his complaint, this Court can take judicial notice of the testimony for purposes of its analysis of Defendant's Motion to Dismiss. *See Anderson v. Derby Bd. of Educ.*, 718 F.Supp.2d 258, 273 n. 33 (D. Conn. 2010).

at HVP Partners.  Compl. ¶ 41.  In fact, as reflected in the company's organizational chart, Illarramendi was also a portfolio manager at HVP Partners.  Declaration of Richard Gora dated June 1, 2012 (the "Gora Declaration"), Ex. A, Organizational Chart of HVP Partners.  Thus, contrary to what the Receiver asserts in the Complaint, Mr. Luth did not hold "final responsibility for making investment decisions" at HVP Partners.  Compl. ¶ 41.  Indeed, the Organizational Chart reflects that both Mr. Luth and Illarramendi had separate portfolios and responsibilities at HVP Partners.

Furthermore, the Receiver's claim ("upon information and belief") that Mr. Luth had the "final say" in investment decisions at HVP is contradicted by sworn testimony that Illarramendi gave before Judge Arterton on May 25, 2011.  Illarramendi testified that he was responsible for deciding where money would get dispersed when Highview Point's Master Fund invested in Michael Kenwood Venezuela.  *See* Gora Declaration, Ex. B, May 25, 2011 Transcript, *SEC v. Illarramendi et al.*, 11 Cv. 78 (JBA) ("Tr.") at 343-44.  This testimony is consistent with the organizational chart and plainly demonstrates that Illarramendi had unilateral decision-making authority and responsibility for a separate portfolio.

Finally, and most significantly, Illarramendi's testimony contradicts the Receiver's conclusory claim in the Complant that Mr. Luth "knew" that Illarramendi was engaged in a fraud.  Compl. ¶ 38.  When asked if he told Mr. Luth or Mr. Lopez about a specific set of fraudulent investments Illarramendi made from the Highview Point Master Fund to Michael Kenwood Venezuela in both 2009 and 2010, Illarramendi replied: "I did not tell them that was a fraud. . . .  I portrayed this [investment] to them as a legitimate investment."  *See* Gora Declaration, Ex. B, Tr. 353.

Since all of this information is indisputably within the possession of the Receiver, the Court can and should consider it in evaluating the legal sufficiency of the Complaint's allegations.

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  A complaint does not state a claim by making allegations that are "merely consistent with" a defendant's liability, or that raise a "sheer possibility" that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (quotations omitted). Rather, the complaint's well-pled, non-conclusory factual allegations must "state a claim to relief that is plausible on its face" by creating a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *See Hayden v. Paterson*,

594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  The determination of whether a complaint states a plausible claim for relief requires the court to "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 678.

In addition, Counts One and Four – the intentional fraudulent conveyance claims – require the Receiver to meet the heightened pleading requirements set forth in FED. R. CIV. P. 9(b).  *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 380-81 (D. Conn. 2007).  Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).  To comply with Rule 9(b), the plaintiff must allege particularized facts giving rise to a "strong inference" of fraudulent intent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  As explained by the Supreme Court in the context of a claim for securities fraud, a "strong inference" of scienter is raised at the pleading stage "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

## ARGUMENT

I. **THE CLAIMS FOR INTENTIONAL FRAUDULENT CONVEYANCE (COUNTS ONE AND FOUR) SHOULD BE DISMISSED PURSUANT TO RULES 12(b)(6) AND 9(b)**

    A.     COUNT ONE – ACTUAL FRAUD UNDER CUFTA

Count One alleges that Illarramendi transferred money to Mr. Luth and the other defendants "to further the Ponzi scheme" and "with actual intent to hinder, delay or defraud some or all of the Receivership Entitities' then-existing creditors" in violation of Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Section 52-552e(a)(1). Compl. ¶ 99. This section provides that "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor" if:

> The creditor's claim arose before the transfer was made . . . and if the debtor made the transfer . . . with *actual intent* to hinder, delay, or defraud any creditor of the debtor.

CONN. GEN. STAT. § 52-552e(a)(1) (emphasis added). The section further directs that, in determining actual intent under subsection (1) of Section 52-552e(a), courts may consider the following factors:

> (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

CONN. GEN. STAT. § 52-552e(b); *Sharp Int'l.*, 403 F.3d at 56.  These so-called "badges of fraud" are used as a basis for inferring fraudulent intent by the transferor.  *Sharp Int'l*, 403 F.3d at 56.

### 1.  Count One Fails To State A Claim Upon Which Relief Can Be Granted

Here, only one of the badges of fraud is present; that is, Mr. Luth was an insider by virtue of his being a one-third owner of HVP Partners.  The Complaint does not allege that there was any concealment of the salary and bonus payments to Mr. Luth, that HVP Partners retained possession of any of the money transferred, or that anything about these salary and bonus payments was improper.  Outside of the fact that Mr. Luth was an insider – which, standing alone, is insignificant – none of the traditional factors suggesting an intentional fraudulent conveyance are alleged in the Complaint.  The absence of multiple badges of fraud here is a far cry from the cases in which this Court has found sufficient evidence to raise a strong presumption of fraudulent intent.  *See, e.g., Cradle Co. v. White*, No. 302CV00030TPS, 2006 WL 798900 (D. Conn. Mar. 21, 2006) (presence of five of eleven badges of fraud raises a strong presumption of intent to defraud); *Cendant Corp.*, 474 F. Supp. 2d at 381 (complaint sufficiently pled where plaintiff alleged that criminal defendant transferred several properties to his wife without adequate consideration while subject to a court restitution order and, subsequent to the transfer, the criminal defendant continued to possess and control the properties).

Under the Receiver's own description of the events in the Complaint – that Illarramendi informed Lopez of the fraud but no one else – Mr. Luth had no actual knowledge of Illarramendi's fraudulent scheme.  If Mr. Luth did not have actual knowledge of the fraudulent scheme, it defies logic that payments to Mr. Luth from HVP Partners were designed to *defraud* HVP Partners' creditors.  There are no facts alleged in the Complaint to suggest any intent on behalf of HVP Partners to defraud its creditors by hiding assets with a non-participant in the fraudulent scheme.

Notwithstanding the Receiver's unsupported allegations in the Complaint, there is "an obvious alternative explanation" for the payments made to Mr. Luth from HVP Partners: they are legitimate payments owed to Mr. Luth for his duties as a portfolio manager and one-third owner of HVP Partners. *Twombly*, 550 U.S. at 567-68 (dismissing plaintiff's complaint pursuant to Rule 12(b)(6) because there was a "natural explanation" for the conduct alleged by the plaintiff). Indeed, in the closely related context of bankruptcy, "[c]ase law has established that payments of salary are presumed to be made for fair consideration, and in order for a trustee to avoid them he must establish that the salary payments were in bad faith or the payments were excessive in light of the Defendants' employment responsibilities." *In re TC Liquidations, LLC*, 463 B.R. 257 (E.D.N.Y. 2011). The Receiver has alleged no facts suggesting that the relationship between HVP Partners and Mr. Luth was anything more than an ordinary business relationship. The Complaint itself alleges that the HVP Partners engaged in legitimate transactions that yielded a profit. Compl. ¶ 76; *see also* Gora Declaration, Ex. B, Tr. 367 (describing legitimate investments by HVP Partners).

To show that Mr. Luth knew about or recklessly disregarded Illarramendi's fraud, the Receiver alleges that there were "red flags" that should have alerted Mr. Luth to the existence of Illarramendi's fraudulent scheme. Curiously, the Receiver does not indicate whether the specific red flags cited in the Complaint, *see* Compl. ¶¶ 85(i)-(v), were known to Mr. Luth. Without alleging that Mr. Luth was actually aware of specific red flags, the Complaint's conclusory allegation that red flags existed does not satisfy the Receiver's high burden of pleading a strong inference of fraudulent intent. *See, e.g., Stephenson v. PricewaterhouseCoopers LLP*, No. 11–1204–cv, 2012 WL 1764191, at *3 (2d Cir. May 18, 2012) ("[P]leading the existence of red flags does not establish that a defendant was aware of those warning signals."); *South Cherry Street,*

*LLC v. Hennessee Group, LLC*, 573 F.3d 98, 112 (2d Cir. 2009) (holding that a complaint failed to allege scienter where it was "replete with allegations that [the defendant] 'would have learned the truth" regarding a company's fraudulent conduct "if [it] had performed" the "'due diligence'" that it "promised" to the plaintiff); *In re Image Masters, Inc.*, 421 B.R. 164, 188 (E.D.P.A. 2009) ("The trustee's reliance on her unexplained assumption that somehow and some way Defendants should have known about or investigated Debtors' fraudulent Ponzi scheme is insufficient to meet the requirements of Rule 9(b)."). The most plausible explanation for the continuation of the fraudulent scheme over several years – and one that is supported by the allegations in the Complaint – is that Illarramendi concealed the fraud from Mr. Luth, rather than Mr. Luth consciously avoided discovering the fraud. *See* Gora Declaration, Ex. B, Tr. 353.

The Receiver's premise that the payments to Mr. Luth were part of Illarramendi's fraudulent scheme ignores well-established law that the alleged fraudulent conveyance has to be directly related to the underlying fraud scheme. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 53-57 (2d Cir. 2005). In *Sharp*, the Second Circuit held that the transfer sought to be avoided by the plaintiff must be directly related to the underlying fraudulent scheme. 403 F.3d at 56 (holding that the repayment of a loan, absent knowing participation in fraud by the creditor, is not a fraudulent transfer). *Sharp* involved a massive fraud perpetrated by Sharp's principals on Sharp's creditors. State Street, which was Sharp's largest creditor, realized that Sharp was engaged in fraud and demanded that Sharp repay its debt, which was accomplished through a fraud on new lenders. *Id.* at 51-52. Despite these facts, the Second Circuit concluded that Sharp's payment to State Street was not a fraudulent conveyance. In rejecting the debtor's intentional fraudulent conveyance claim, the Court concluded that the claim "fails for the independent reason that Sharp inadequately alleges fraud with respect to the transaction that Sharpe seeks to avoid, *i.e.*,

Sharp's $12.25 million payment to State Street." *Id.* at 56 (citing with authority *Boston Trading Group v. Burnazos*, 835 F.2d 1504, 1510 (1st Cir. 1987) (Breyer, J.) (discussing the limitations of fraudulent conveyance law)).  The Second Circuit likewise concluded that, because the payment at issue was "at most a preference between creditors," it could not have "hinder[ed], delay[ed], or defraud[ed]" creditors. *Id.* at 56 (dismissing claim under N.Y. DEBT. & CRED. LAW § 276); *see also In re Image Masters, Inc.*, 421 B.R. at 183 ("[A] plaintiff must set forth some factual allegations of fraudulent intent in connection with the specific transfer sought to be avoided and must show some direct connection between a defendant and a debtor's fraudulent Ponzi scheme.").

Here, the payments to Mr. Luth and the other defendants are attenuated from the alleged Ponzi scheme.  The alleged Ponzi scheme described in the Complaint, as with all Ponzi schemes, relied on obtaining investments from newer investors to pay off initial investors.  Compl. ¶ 33. The Receiver's bald assertion that payments to Mr. Luth somehow furthered the alleged Ponzi scheme is insufficient under the Second Circuit's decision in *Sharpe*; specifically, since payments to Mr. Luth were not part and parcel of the Ponzi scheme set forth in the Complaint, they cannot satisfy the standard for an intentional fraudulent conveyance.

Finally, the Receiver cannot rely on Mr. Luth's assertion of his Fifth Amendment rights to save his inadequate pleading.  It is well-established that a defendant's assertion of his Fifth Amendment rights does not satisfy a plaintiff's pleading requirements.  *See, e.g., Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991) ("The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production."); *Curtis v. Trustmark Nat'l Bank*, 177 B.R. 717 (S.D. Ala. 1995) ("If a plaintiff

offers no evidence of fraud, . . . the inference drawn from invocation of the Fifth Amendment does not by itself establish fraud.").

### 2.      Count One Should Be Dismissed For Failure To Plead With Particularity

For the same reasons that it fails to state a claim for which relief can be granted, Count One fails to allege particularized facts giving rise to a "strong inference" of fraudulent intent as required by Rule 9(b).  To satisfy Rule 9(b)'s requirement to plead fraud sufficiently with respect to an intentional fraudulent conveyance, the Receiver must allege with particularity the timing and frequency of the alleged fraudulent transfers, the property that was allegedly transferred, and the consideration paid.  *See United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221-22 (S.D.N.Y. 2002) (Lynch, J.)  Here, the Receiver plainly has not met this standard.  The Received simply lumps together all the payments to Mr. Luth and the other defendants into one bucket and alleges that these payments reflected a scheme by HVP Partners to defraud its creditors without identifying how the payments related to fraudulent conduct by Illarramendi.  The Receiver likewise makes no effort to account for whether any of the payments to Mr. Luth were for consideration relating to legitimate work performed by Mr. Luth.  The Receiver's allegations do not satisfy Rule 9(b)'s heightened standard for pleading fraud.

For all the foregoing reasons, the Court should dismiss Count One for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity pursuant to Rule 9(b).

### B.      COUNT FOUR – COMMON LAW FRAUDULENT CONVEYANCE

In Count Four of the Complaint, the Receiver alleges that Mr. Luth violated the common law prohibition against fraudulent conveyance.  The elements of a claim of fraudulent conveyance under the common law require proof that (1) the transferor had intent to defraud the creditor; and (2) that the transferee shared in the transferor's intent.  *See, e.g., Bizzoco v. Chinitz*,

193 Conn. 304, 312 (1984); *National Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*, No. 3:00-CV-1925, 2008 WL 450413, at *26 (D. Conn. Feb. 15, 2008).

Here, the Receiver has not come forward with sufficient allegations to support either element of a claim for common law fraudulent conveyance. First, as discussed in detail above, the Complaint fails to plead a plausible claim that the payments HVP Partners made to Mr. Luth were designed to defraud HVP Partners' creditors. Second, the Complaint does not contain specific factual allegations to support a conclusion that Mr. Luth had *actual* knowledge of Illarramendi's fraudulent conduct or that Mr. Luth shared in HVP Partners' or any other Receiver Entities' fraudulent intent in making salary or bonus payments. Instead, the Complaint alleges in summary fashion that Mr. Luth "either knew . . . or consciously or recklessly avoided" learning about the fraudulent scheme. *See, e.g.*, ¶ 38. Without any factual development for the claim that Mr. Luth had actual knowledge of Illarramendi's fraudulent scheme, the Receiver's unsupported claim should not be accorded the presumption of truth and should be dismissed under 12(b)(6). *See Iqbal*, 556 U.S. at 679.

For the same reasons as set forth above for Count One, Count Four also should be dismissed under Rule 9(b) for the failure to plead fraud with particularity. In addition, with respect to Count Four, the Complaint fails to plead specific factual allegations that give rise to a strong inference that Mr. Luth shared in any fraudulent intent on the part of Illarramendi or HVP.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR CONSTRUCTIVE FRAUDULENT CONVEYANCE (COUNTS TWO AND THREE)

Counts Two and Three each allege that salary and bonus payments made to Mr. Luth are recoverable by the Receiver as constructive fraudulent conveyances in violation of CUFTA. Specifically, each claim alleges that transfers of money to Mr. Luth were made "without receipt of reasonably equivalent value from [Luth]." Compl. ¶¶ 107, 118. Count Two alleges a

violation of CUFTA Section 52-552e(a)(2), which provides that "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor" if:

> The creditor's claim arose before the transfer was made . . . and if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . , and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

CONN. GEN. STAT. § 52-552e(a)(2).

Similarly, Count Three alleges a violation of CUFTA Section 52-552f(a), which provides that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." Therefore, both Counts Two and Three hinge on whether HVP Partners and the other Receivership Entities received "reasonably equivalent value" in exchange for the payments they made to Mr. Luth.

As with the intentional fraudulent transfer claims discussed above, the Receiver's allegations with respect to its receipt of "reasonably equivalent value" fall far short of the factual specificity required by *Iqbal*. The Receiver's allegations that the transfers to Mr. Luth failed to exchange "reasonably equivalent value" necessarily implies that Mr. Luth knew about or recklessly avoided learning about Illammarendi's fraud. Without such a presumption, Counts Two and Three fail to state a claim for relief.

In the Complaint, the Receiver fails to identify *any* facts known to Mr. Luth that should have alerted Mr. Luth that Illarramendi's actions were dubious. The Complaint does not allege one affirmative act by Mr. Luth showing that Mr. Luth consciously or recklessly avoided inquiry as to the fraudulent scheme. Indeed, the Receiver's own allegations demonstrate that

Illarramendi specifically intended and agreed to hide the scheme from everyone else.  Compl. ¶ 43.  Nor does the Complaint set forth one example demonstrating that Mr. Luth learned that Illarramendi was commingling client funds or misappropriating these funds for inappropriate purposes.

The Complaint next pleads, without any concrete factual development, that the payments set forth in Exhibit A to the Complaint were "non-ordinary course payments," which "resulted from complex transactions orchestrated by Illarramendi to allow him to continue his fraud." Complaint, ¶ 46.  These "naked assertions devoid of further factual development" are precisely the type of claims that *Iqbal* prohibits.  For example, the Complaint nowhere indicates the specifics of Mr. Luth's salary and the bonus structure for HVP Partners.  The Complaint alleges that Mr. Luth was a portfolio manager and partner at HVP Partners starting in 2004. Notwithstanding the Receiver's allegation, regular distributions to partners are not unusual payments.  The absence of the badge of fraud, as discussed above, also leads to the conclusion that an equally plausible alternative to the Receiver's allegations exists: that the payments set forth in Exhibit A were legitimate salary and partner distribution payments to Mr. Luth.

The Complaint contains nothing more than conclusory assertions that HVP Partners failed to receive "reasonably equivalent value" for the payments to Mr. Luth.  If the Receiver's investigation -- which Illarramendi is undoubtedly assisting as part of his plea agreement with the Government, *see* Illarramendi Testimony at  354 -- had found any indication that the payments to Mr. Luth were for something other than salary and legitimate partner distributions, the Receiver surely would have included such facts in the Complaint.  Since the Receiver did no such thing, and instead chose to assert a "formulaic recitation of the elements" of a constructive fraudulent conveyance claim, these allegations are not entitled to be assumed true.  *Iqbal*, 556

U.S. at 680-81 (finding that the "bare assertions" that John Ashcroft "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement solely on account of his religion, race, and/or national origin . . . .  disentitles them to the presumption of truth"); *Twombly,* 550 U.S. at 550-51 (dismissing plaintiff's complaint because allegations that plaintiff, as part of the regional Bell operating companies, conspired to restrain trade by inflating charges for local telephone service and refrained from competing against other regional operating companies lacked sufficient factual support to suggest that an agreement had been made).  As the Supreme Court emphasized in *Twombly*, "without some further factual enhancement," a "naked assertion of conspiracy . . . gets the complaint close to stating a claim . . . but stops short of the line between possibility and plausibility of 'entitlement to relief.'" 550 U.S. at 557.  Consistent with *Twombly* and *Iqbal,* the Court should ignore the Receiver's conclusory, unsupported claims of Mr. Luth's constructive notice of Illarramendi's fraudulent scheme.

Accordingly, because the Complaint does not state a plausible claim for constructive fraudulent conveyance, Counts Two and Three should be dismissed.

## III.    THE COURT SHOULD DISMISS THE CUTPA CLAIM (FIFTH COUNT)

Count Five should be dismissed since it is outside the scope of CUTPA.  As numerous courts have held, CUTPA does not apply to intracorporate affairs and employment issues, which is the subject of the Receiver's allegations.

Mr. Luth did not engage in wrongful conduct "in the conduct of any trade or commerce" as required to state the *prima facie* elements of a violation of CUTPA, CONN. GEN. STAT.  § 42-110b.  "Trade" and "commerce" are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this

state."  CONN. GEN. STAT. § 42-110a(4).  "Whether the defendant is subject to CUTPA is a

question of law, not fact"  *Connelly v. Housing Authority*, 213 Conn. 354, 364-365 (1990).

"It is well settled that purely intracorporate conflicts do not constitute CUTPA violations"

because of the lack of a nexus with "trade" or "commerce."  *Compare Metcoff v. Lebovics*, 123

Conn. App. 512, 519 (2010) (affirming dismissal of a CUTPA claim on intracorporate conflict

grounds because "plaintiffs did not allege that the defendants personally engaged in any business

or commercial activity in competition with the plaintiffs."); *with Ostrowski v. Avery*, 243 Conn.

355, 379 (1997), *corrected* (2005) (reversing trial court's decision dismissing CUTPA claim

because defendant established the exception to the intracorporate conflict doctrine by proving the

usurpation of a corporate opportunity).

For example, in *NatTel LLC v. SAC Capital Advisors*, the plaintiff minority shareholder

asserted a CUTPA claim against the defendant majority shareholder because, among other

things, defendant "fabricated, or caused [the corporation] to fabricate, various stock certificates,

corporate resolutions, minutes and other [corporation] corporate and financial documents[.]"  No.

3:04CV1061, 2005 WL 2253756, at *2 (D. Conn Sept. 16, 2005), *aff'd* 370 Fed. Appx. 132 (2d

Cir. 2006).  Judge Arterton noted that plaintiff did not allege any diversion of corporate assets or

usurpation of corporate opportunities and <u>dismissed</u> the CUTPA claim because the "challenged

conduct clearly reflects only the internal corporate operations and therefore cannot support a

claim under CUTPA."  *Id.* at *13; *cf. Fink v. Golenbock*, 238 Conn. 183, 213 (1996) (reversing

trial court's decision dismissing CUTPA claim where defendant's "actions went well beyond

governance of the corporation, and placed [defendant] in direction competition with the interest

of the corporation").

In *Ackerman v. Sobol Fam. P'Ship, LLP*, the court dismissed plaintiff's CUTPA claim because plaintiff failed to alleged facts that defendant's actions were "well beyond the governance of the partnership and place him in direct competition with the interests of the entity." No. CV030826123, 2004 WL 1194067, at *3 (Conn. Super. May 12, 2004). Plaintiff alleged, among other things, the defendant "contracted for and accepted these excessive fees knowing that payment of such fees was a breach of the partnership agreement and a breach of [her] fiduciary duties to the partnership and its general partners." *Id.* at *2. The court stated that "[t]hese allegations deal with nothing more than a disagreement over [defendant's] governance of the partnership as general managing partner: an intrinsic conflict between the plaintiff and defendant over how defendant conducts the partnership's business." *Id. at *4.*

In *Adler v. Snoddy*, the court dismissed plaintiff's CUTPA claim because "the allegations here involve a dispute between the majority and minority owners of a limited liability company, and [plaintiff] has not demonstrated that [defendant] took 'certain actions designed to usurp the business and clientele of one corporation in favor of another.'" No. CV020399008, 2003 WL 22413500, at *10 (Conn. Super. Oct. 7, 2003) (quoting *Fink*, 238 Conn. at 212); *see also Jalbert v. Stanziale*, No. CV010454543S, 2002 WL 172731, at *2 (Conn. Super. Jan. 7, 2002) (dismissing CUTPA claim because defendant's "actions occurred within the limits of the corporation, and, as previously noted, *CUTPA is only applicable in situations where a partner or co-owner has acted contrary to the partnership or corporation's best interest <u>and in favor of another partnership or corporation.</u>*") (emphasis added); *Bobbin v. Sail the Sounds, LLC*, No. CV020563884S, 2003 WL 22206799, at *8 ("The dispute does not arise out of a competitive relationship or consumer relationship between the parties *which envisages separate entities*-the

dispute arises out of an internal partnership and/or employer-employee relationship.") (emphasis added).

No "trade" or "commerce" is found for disputes arising from an employment relationship. *See Muniz v. Kravis*, 59 Conn. App. 704, 711 (2000) ("an employment relationship does not constitute trade or commerce for purposes of CUTPA"); *see also Adler v. Snoddy*, No. CV020399008, 2003 WL 22413500, at *10 ( Conn. Super. Oct. 7, 2003) (disputes among members of <u>limited liability company</u> are not "trade" or "commerce"); *Chester v. Schatz & Schatz, Ribicoff & Kotkin*, 6 Conn. L. Rptr. 526 (1992) ("internal strife of a <u>partnership</u>" does not arise from "trade" or "commerce"); *Anderson v. E. & J. Gallo Winery*, Civ. No. H 85-295, 1985 WL 134, at *3 (D. Conn. Nov. 7, 1985) ("<u>actual employment relationship</u>" is not "trade" or "commerce").

The CUTPA claim against Mr. Luth is purely an intracorporate dispute that is excluded from the scope of CUTPA. The Receiver admits that Mr. Luth had no role in the creation of the alleged fraud. *See, e.g.,* Compl. ¶ 11 (referring to alleged fraud as "Illarramendi's scheme"). The Receiver alleges that Mr. Luth violated CUTPA as a result of alleged violations of his duties and responsibilities as a member, manager and/or employee of HVP Partners. Compl. ¶ 11, 133. Under these circumstances, a cause of action under CUTPA does not lie. *See Ackerman*, 2004 WL 1194067, at *3 (dismissing CUTPA claim as an intracorporate dispute where it was pleaded that defendant accepted excessive fees with knowledge that acceptance of such fees was breach of the partnership agreement and a breach of fiduciary duties to the partnership and its general partners).

The Receiver also fails to allege facts establishing that Mr. Luth diverted assets or usurped corporate opportunities *in favor of another entity.* This, alone, is fatal to the Receiver's

CUTPA claim.  *See Jalbert*, 2003 WL 22206799, at *8 (dismissing CUTPA claim because of lack of allegation of another entity since exception to intracorporate dispute doctrine "envisages separate entities"); *Bobbin,* 2002 WL 172731, at *2 (same).

The Receiver also fails to allege how Mr. Luth's rendition of services only to HVP Partners is tied to "trade" or "commerce." There is no allegation that Mr. Luth rendered services for any Receivership Entity (other than HVP Partners), nor engaged in any "trade" or "commerce" with any entity (other than HVP Partners).  In fact, there is no allegation of <u>any</u> affirmative conduct by Mr. Luth – the Receiver's allegations against Mr. Luth are based entirely on Mr. Luth's alleged failure "<u>to properly oversee</u> Illarramendi's activities, the investments of the Offshore Fund and the maintenance of the books and records of the Offshore Fund."  Compl. ¶ 33.  Conduct particularly more egregious than that alleged against Mr. Luth has been dismissed as an intracorporate dispute excluded from the scope of CUTPA.  *See NatTel LLC*, 2005 WL 2253756, at *2 (Arterton, J.) (CUTPA claim dismissed where allegations included *fabricating or causing the entity to fabricate corporate and financial documents*).  For all of these reasons, the CUTPA cause of action must be dismissed as a matter of law.

## IV.    THE COURT SHOULD DISMISS THE BREACH OF FIDUCIARY DUTY CLAIM (SIXTH COUNT)

The Receiver alleges Mr. Luth breached his fiduciary duty by "the misuse of corporate assets, self-dealing, mismanagement, corporate waste, failure to prepare, implement and carry out compliance and supervisory responsibilities and policies, failure to heed red flags, and breaches of their duty to act with care, loyalty, and good faith and fair dealing."  Compl. ¶ 141. The Receiver, however, fails to allege any factual predicates for these conclusory allegations. The breach of fiduciary duty claim rests and turns on the same (insufficient) allegations that underlie the fraudulent conveyance claims.  Accordingly, for the same reasons as set forth above

for Count One and Count Four (Sections I and II, *supra*), the breach of fiduciary duty claim should be dismissed for failure to state a plausible claim upon which relief can be granted and for failure to plead fraud with particularity.  *See Milo v. Galante*, 3:09cv1389, 2011 WL 1214769 (D. Conn. Mar. 28, 2011) (a plaintiff must abide by the heightened standard of Rule 9(b) "where allegations of fraudulent conduct form a necessary foundation for [the] claim.").[2]

## V. THE COURT SHOULD DISMISS THE UNJUST ENRICHMENT CLAIM (SEVENTH COUNT)

Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83 (1994).  For the same reasons as set forth above for Count One and Count Four (Sections I and II, *supra*), the unjust enrichment claim should be dismissed for failure to failure to state a plausible claim upon which relief can be granted and for failure to plead fraud with particularity.  *See Milo v. Galante*, 3:09cv1389, 2011 WL 1214769 (D. Conn. Mar. 28, 2011) (a plaintiff must abide by the heightened standard of Rule 9(b) "where allegations of fraudulent conduct form a necessary foundation for [the] claim.").

## VI. THE COURT SHOULD DISMISS THE CONVERSION CLAIM (NINTH COUNT)

The conversion claim should be dismissed because the Receiver has not alleged (i) an <u>unauthorized</u> transfer of money to Mr. Luth; or (ii) that the money allegedly transferred to Mr. Luth is <u>specifically segregated or identifiable</u>.

"Conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Marinos v. Poirot*,

---

[2] Rule 9(b) applies to the extent any of the Receiver's remaining claims in Counts Five through Ten are based on fraudulent conduct.

132 Conn. App. 693 (2011); *Mystic*, 284 Conn. at 418.  To state a conversion claim, the Receiver

"must prove a sufficient property interest in the items in question."  *Mystic*, 284 Conn. at 418;

*Discover Leasing, Inc. v. Murphy*, 33 Conn. App. 303, 309, (1993) (prima facie case for

conversion requires proof that property in question "belonged to" plaintiff).

A.   THE TRANSFERS TO MR. LUTH WERE AUTHORIZED

"[A]n essential element of the tort of conversion is the *unauthorized* use of another's

property."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 47 (2000) (emphasis in

original) (affirming judgment in favor of defendant on conversion claim because the jury's

finding that "defendant's use of the plaintiff's tower facility was authorized is fatal to the

plaintiff's cause of action for conversion").  The Receiver does not allege that any transfers to

Mr. Luth were unauthorized.

For example, in *Peplau v. Roberto*, a client brought a conversion claim against his former

attorney for having "engaged in a continuing course of misappropriation wherein [attorney]

intentionally, maliciously and wilfully took for himself the [p]laintiff's assets, including but not

limited to, overcharging and over billing him for legal work."  No. CV095026591S, 2011 WL

3671968, at *2 (Conn. Super. July 22, 2011).  The court dismissed the conversion claim where

the former attorney was "authorized to collect certain fees from the plaintiff" because "[t]he

complaint admits that the plaintiff retained the defendant to represent him in, *inter alia*,

numerous criminal matters and that the plaintiff signed a series of fee agreements with respect to

that representation. *Id.*

Here, the Receiver alleges that compensation was paid to Mr. Luth by HVP Partners.

Compl. ¶ 4.  The Receiver alleges only that Mr. Luth "did not rightfully earn" the compensation.

The distinction is meaningful.  The Receiver's allegation that Mr. Luth was paid excessive

compensation is not proper for a conversion claim. *See Peplau*, 2011 WL 3671968, at \*2. There is no allegation that Mr. Luth stole money from HVP Partners.

Without allegations demonstrating unauthorized transfer, a claim for conversion must be dismissed. *See  Vanguard Engineering, Inc. v. Anderson*, 83 Conn. App. 62, 67 (2004) (to prevail on claim of conversion requires a showing that defendant's conduct was in fact <u>unauthorized</u> and stating "[i]f the payments were authorized, the court could not have found that the defendants converted" the property); *In re Flanagan*, 415 B.R. 29, 46 (D. Conn. 2009) (affirming judgment on conversion claim on authorization grounds because "no evidence that [possessor of property] acted inconsistently with [plaintiff's] wishes by taking legal title to [properties]—the undisputed facts demonstrate that [plaintiff] Flanagan entered into the transactions to fund [possessor's] purchases willfully and voluntarily").

### B.   THE MONEY TRANSFER TO MR. LUTH IS NOT SPECIFICALLY SEGREGATED OR IDENTIFIABLE

The Receiver "must establish legal ownership or right to possession in the particular thing, the specifically identifiable moneys, that the defendant is alleged to have converted." *Macomber v. Travelers Property & Casualty Corp.*, 261 Conn. 620, 650 (2002).  "[A]n action for conversion of funds may not be maintained to satisfy a mere obligation to pay money." *Sullivan v. Thorndike*, 104 Conn. App. 297, 309 (2007) (quoting *Macomber*, 261 Conn. at 650). In order to prevail on this claim, the Receiver must plead that the money belonged to the plaintiff and that Mr. Luth converted it to his own use. *Id.*  "Thus the requirement that the money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally." *Id.*

On these grounds, the court in *Garner v. W.R. Berkley Corp.* dismissed plaintiff's claim for conversion of stock options because:

The stock options to which the plaintiff claims he is entitled, though definite in quantity, measured as a fixed percentage (1%) of all outstanding common stock of [company], **are not definite in identity**. That is, they are not particular options for the acquisition of particular shares of [company] stock which the plaintiff could somehow identify, by number, date of issuance or otherwise, and thus they are not property which the plaintiff had the right to possess in such a manner, like a specific, identifiable chattel, that another person's interference with that right of possession would constitute conversion. *Instead, like a claim for the payment of money generally, the plaintiff's claimed right to be granted the promised stock options as to an undifferentiated quantity of common stock representing one percent (1%) of all outstanding common stock issued by [company] was like a claim for the payment of money generally, which cannot serve as the basis for a conversion action.*

No. HHDCV0905033428S, 2010 WL 3447880, at *5 (Conn. Super. Aug. 9, 2010) (emphasis added).

The Receiver's conversion claim is improper because it seeks recovery of a purported debt owed by Mr. Luth to the Receivership Entities.  The Receiver makes no allegation that Mr. Luth stole any specifically identifiable money belonging to HVP Partners or any other Receivership Entity in a separately segregated account.  The Receiver alleges no ownership or right to possession in the particular specifically identifiable money transferred to Mr. Luth by HVP Partners.  This would be inconsistent with the nature of the money (compensation) transferred to Mr. Luth.  The Receiver makes no allegation that, at the time of the transfers, HVP Partners had an expectation that Mr. Luth would return the exact money to it.  Given these deficiencies, the cause of action for conversion must be dismissed as a matter of law.

## VII.   THE COURT SHOULD DISMISS THE PORTIONS OF THE CLAIMS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

The court may dismiss a portion of a claim under FED. R. CIV. P. 12(b)(6) when it is barred by the applicable statute of repose or statute of limitations.  *See United States v. PA. Shipbuilding Co.*, 473 F.3d 506, 514-515 (3d Cir. 2007) (recognizing that district court dismissed

"the portion of the first count" that was barred by statute of limitations); *Williams v. Hawkeye Cmty. Coll.*, 494 F. Supp. 2d 1032, 1042 (N.D. Iowa 2007) (dismissing portion of claim occurring outside limitations period); *Weyrick v. New Albany-Floyd Cnty. Consol. Sch. Corp.*, No. 4:03-CV-0095, 2004 WL 3059793, at *16 (S.D. Ind. Dec. 23, 2004) (same); *Hale v. Renee-Baker*, No. 01 C 7073, 2002 WL 1613765, at 4(N.D. Ill. July 19, 2002) (same); *Cunningham v. The Pinellas Cnty. Sheriff's Dept.*, No. 8:99-CV-550-T-25C, 2000 WL 641601, at *1 (M.D. Fl. Feb. 29, 2000) (same); *Sierra Club v. Pena*, 915 F. Supp. 1381, 1393 (N.D. Oh. 1996).

### A.  PORTIONS OF THE FIRST, SECOND AND THIRD COUNTS (FRAUDULENT TRANSFERS UNDER CUFTA) SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 52-552j

The Receiver's <u>Second</u> (Constructive Fraud, CONN. GEN. STAT. § 52-552e(A)(2)) and <u>Third</u> (Actual Fraud, CONN. GEN. STAT. § 52-552f(A)) Causes of Action are extinguished unless the action is brought within four (4) years after the transfer was made or the obligation was incurred. CONN. GEN. STAT. § 52-552j. The Receiver's <u>First</u> Cause of Action (Actual Fraud, CONN. GEN. STAT. § 52-552e(A)(1)) is extinguished within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant. CONN. GEN. STAT. § 52-552j.

This action was commenced on February 3, 2012. Any transfer occurring prior to February 3, 2008 is, therefore, outside the four (4) year limitations period.

### B.  PORTIONS OF THE FOURTH (COMMON LAW FRAUD), SIXTH (BREACH OF FIDUCIARY DUTY), SEVENTH (UNJUST ENRICHMENT) AND NINTH (CONVERSION) COUNTS SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 52-577

"No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." CONN. GEN. STAT. § 52-577. This statute of repose is applicable to claims for (i) common law fraudulent transfer (Fourth Claim), *see Valentine v.*

*LaBow*, 95 Conn. App. 436, 446 (2006), *Travelers Indemnity Co. v. Rubin*, 209 Conn. 437

(1988); (ii) breach of fiduciary duty (Sixth Claim), *see Ahern v. Kappalumakkel*, 97 Conn. App.

189, 194 (2006); (iii) unjust enrichment (Seventh Claim), *see Sethi v. Yagildere*, No.

CV106005852, 2011 WL 1288137, at *5 (Conn. Super. Ct. Mar. 10, 2011); and (iv) conversion

(Ninth Claim), *see Stuart & Sons, L.P. v. Curtis Pub. Co.*, 456 F. Supp. 2d 336 (D. Conn. 2006).

"Section 52-577 is an occurrence statute, meaning that the time period within which a

plaintiff must commence an action begins to run at the moment the act or omission complained

of occurs." *Valentine v. LaBow*, 95 Conn. App. at 445.  "The history of that legislative choice of

language [in § 52-577] precludes any construction thereof delaying the start of the limitations

period until the cause of action has accrued or the injury has occurred."  *Fichera v. Mine Hill

Corp.*, 207 Conn. 204, 212 (1988); *see also* Watts v. Chittenden, 301 Conn. 575 (2011).  "The

three year limitation period of Section 52-577  therefore, begins with the date of the act or

omission complained of, not the date when the plaintiff first discovers an injury." *Valentine*, 95

Conn. App. at 445.

In analyzing whether a claim is outside the three (3) year period of CONN. GEN. STAT. §

52-577, the only facts relevant to the court's decision are "the date of the wrongful conduct

alleged in the complaint and the date the action was filed." *Valentine*, 95 Conn. App. at 446-477.

Any transfer occurring prior to February 3, 2009 is, therefore, outside the three (3) year

limitations period.  Accordingly, the Court should dismiss those portions of the Fourth, Sixth,

Seventh and Ninth Causes of Action premised on the transfers to Mr. Luth, *see* Exhibit A to the

Complaint, occurring prior to February 3, 2009.

**C.   PORTIONS OF THE FIFTH COUNT (VIOLATION OF CUTPA) SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 42-110g(f)**

"An action under this section may not be brought more than three years after the occurrence of a violation of this chapter." CONN. GEN. STAT. § 42–110g(f).  "Unlike the statutes of limitation of some other states applicable to unfair trade practices legislation analogous to our CUTPA, which expressly allow a certain period following the discovery of the deceptive practice for commencing suit ... § 42–110g(f) provides only that an action must be brought within three years 'after the occurrence of a violation of this chapter.'" *Fichera*, 207 Conn. at 212 (internal citations omitted).

Any transfer occurring prior to February 3, 2009 is, therefore, outside the three (3) year limitations period.  Accordingly, the Court should dismiss the portion of the Fifth Cause of Action premised on the transfers to Mr. Luth, *see* Exhibit A to the Complaint, occurring prior to February 3, 2009.

**D.   PORTIONS OF THE TENTH COUNT (ACCOUNTING) SHOULD BE DISMISSED AS BARRED BY CONN. GEN. STAT. § 52-576**

"No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." CONN. GEN. STAT. § 52-576.

The six (6) year limitations period of CONN. GEN. STAT. § 52-576 applies to a claim of accounting.  *Bowerman v. Oakliff*, No. CV010094089, 2003 WL 22413516, at *4 (Conn. Super. Oct. 7, 2003); *Russo v. Owens*, No. CV98357874S, 2002 WL 31886668, at *2 (Conn. Super. Dec. 6, 2002); *Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961, 965 (D. Conn. 1979).

Any diversion of assets occurring prior to February 3, 2006 is, therefore, outside the six (6) year limitations period.  Accordingly, the Court should dismiss the portion of the Tenth

Cause of Action premised on the transfers to Mr. Luth, *see* Exhibit A to the Complaint, occurring prior to February 3, 2006.

## VIII.   THE COURT SHOULD DISMISS THE CLAIM FOR A CONSTRCUTIVE TRUST (EIGHTH COUNT)

"[T]here is no separate cause of action under Connecticut law for constructive trust, but rather a constructive trust is a remedial device designed to prevent unjust enrichment." *See Giulietti v. Giulietti*, 65 Conn. App. 813, 856 (2001) ("[t]he imposition of a constructive trust by equity is a *remedial device* designed to prevent unjust enrichment") (emphasis added); *see also Macomber v. Travelers Property and Cas. Corp.*, 261 Conn. 620, 623 n. 3 (2002) (explaining that a constructive trust is not a substantive cause of action, but a remedy); *Gulack v. Gulack*, 30 Conn. App. 305, 311 (1993) ("A constructive trust is an *equitable remedy* imposed to prevent unjust enrichment.") (emphasis added).

The Receiver's claim for a constructive trust should be dismissed. *See Romero v. Gewirtz*, No. FSTCV095013109S, 2011 WL 4953481, at *3 (Conn. Super. Sept. 28, 2012) (dismissing claim for constructive trust and stating that "[g]iven the Supreme Court's language in the *Macomber* case indicating that a constructive trust is properly pleaded as a remedy as opposed to a separate cause of action, and the general case law stating that a constructive trust is an equitable remedy for unjust enrichment, count four is legally insufficient and is stricken"); *Goodman v. Janati*, No. CV106006582S, 2012 WL 447647, at *7 (Conn. Super. Jan. 23, 2012) (dismissing claim for constructive trust and stating that "[a]lthough there is currently a split of authority in the Superior Court regarding this issue, the cases that have held that a constructive trust cannot be brought as an independent cause of action are better reasoned").

To the extent, the Court does not dismiss the Eighth Cause of Action, the Court should dismiss those portions of the Eighth Cause of Action outside the relevant limitations period.  The

statute of limitations that is applicable for the imposition of a constructive trust is the statute of limitations applicable to the claim on which the constructive trust is sought. *See supra* at Section VI; *see also Gager v. Sanger*, 95 Conn. App. 632, 641 (2006); *Dowling v. Finley Associates*, 40 Conn. App. 330, 335 (1998), *rev'd,* 248 Conn. 364 (1999) (where a party seeks equitable relief in a cause of action that would also allow for legal relief the statute of limitation for that cause of action nonetheless applies).

## IX.   THE COURT SHOULD STRIKE PARAGRAPH 70 FROM THE COMPLAINT

In paragraph 70 of the Complaint, the Receiver has alleged that Mr. Luth's family members made use of the Master Fund to conduct a series of private bond transactions.  Compl. ¶ 70.  "[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . ."  FED. R. CIV. P. 12(f).  The decision to strike a pleading rests in the court's discretion."  *Pavent v. Rand-Whitney*, No. 3:96CV01977, 1997 WL 527367, at *2 (D. Conn. July 16, 1997).

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues."  *SEC v. Treadway*, No. 11 Civ. 1534, 2011 WL 2623469, at *1 (S.D.N.Y. June 29, 2011);  *Lyddy v. Civil Bridgeport Bd. of Educ.*, No. 3:06CV1420, 2007 WL 2697452, at *7 (D. Conn. Sept. 11, 2007) (holding motions to strike may be granted "if the allegations have no bearing on the claims alleged, are likely to prejudice the movant, or have 'criminal overtones'").  "A court should strike the disputed matter if it is irrelevant under any state of facts which could be proved in support of the claims being advanced." *U.S. v. New Hill Homes Assocs., Ltd. P'ship*, No. 3:99CV611, 2000 WL 306623, at *6 (D. Conn. Feb. 29, 2000) (Underhill, J.) (internal citations omitted).

The allegations in Paragraph 70 should be stricken from the Complaint because they are completely immaterial to the case and the causes of action alleged by the Receiver. The family members referenced in paragraph 70 are not parties to the action. The Receiver does not seek any damages stemming from the alleged conduct. There is no allegation that HVP suffered any loss as a result of the trades mentioned in paragraph 70. There is no allegation that the trades were unauthorized. In sum, the allegation is gratuitous, immaterial, and has no logical connection to the action. Inclusion of the allegation in the case will needlessly broaden discovery. For these reasons, the Court should strike paragraph 70.

## X.    MR. LUTH ADOPTS APPLICABLE ARGUMENTS FOR DISMISSAL OF HIS CO-DEFENDANTS

Mr. Luth respectfully adopts the argument for dismissal of any of his co-defendants to the extent applicable to him.

## <u>CONCLUSION</u>

Defendant Christopher Luth respectfully requests that the Court grant his motion to dismiss and motion to strike, together with such other and further relief as the Court deems just and proper.

DEFENDANT
CHRISTOPHER LUTH

By:     /s/ Alfred U. Pavlis
      Alfred U. Pavlis (ct08603)
      Richard S. Gora (ct27479)
      FINN DIXON & HERLING LLP
      177 Broad Street, 15th Floor
      Stamford, CT 06901-2689
      Tel: (203) 325-5000
      Fax: (203) 325-5001
      apavlis@fdh.com
      rgora@fdh.com

      *Of Counsel*
      Michael Q. English
      FINN DIXON & HERLING LLP
      177 Broad Street, 15th Floor
      Stamford, CT 06901-2689
      Tel: (203) 325-5000
      Fax: (203) 325-5001
      menglish@fdh.com

## CERTIFICATION

I hereby certify that on June 1, 2012, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

By: /s/ Alfred U. Pavlis
    Alfred U. Pavlis (ct08603)
    FINN DIXON & HERLING LLP
    177 Broad Street, 15th Floor
    Stamford, CT  06901-2689
    Tel: (203) 325-5000
    Fax: (203) 325-5001
    E-mail: apavlis@fdh.com